Case No. 316-0563, People of the State of Illinois, Eppley v. Gary Zinovec v. Darren Jackson Jr., Appellant by Jessie Harris Good morning. Good morning. Please report. My name is Jessie Harris. I'm here on behalf of Darren Johnson, the appellant in this matter. And our issues today are two. One, whether as a matter of law, the state proved Mr. Darren Johnson Jr. guilty beyond a reasonable doubt of residential burglary, two counts of attempted criminal sexual assault. And number two, whether as a matter of law, the trial court erred in finding Mr. Johnson guilty of attempted criminal sexual assault, given the finding that there was a substantial step taken toward the commission of the felony, but we argue that there was no specific intent. On July 25th, 2015, I apologize in my brief, on page 4, I have July 25th, 2016, and actually 2015, Mr. Johnson was arrested at the home of a complainant and charged initially with one count of residential burglary and criminal trespass. On October 8th of 2015, there was a superseding indictment wherein Mr. Johnson was charged with two counts of residential burglary, one count of attempted criminal sexual assault, and criminal trespass to a residence. The facts of this case, the current facts, are that on July 25th, 2015, the complainant was at her home. She heard a back patio door slide open. She heard footsteps coming up the stairs, and she identified Mr. Darren Johnson as the person who had entered her home. She had not given Mr. Johnson authority to enter the home. She then testified that when she saw the defendant appellant, he began removing his shoes and began removing his pants, pulled them down to about mid-thigh, and says, I'm ready for you. She screamed for him to leave, and at page 45, she screamed for him to leave. After that, according to the complainant, he pulled up his pants, and then he took a step back, and he asked me if anyone was in the home. That's page 45 of the record, lines 10 and 11. Afterwards, the complainant says, yes, my parents are actually in the backyard, on the same page of the record, and at that point, there are different versions of what happened. Initially, when she provided a written statement, initially after the arrest, and this will be found on IC pages two and three, while he was looking around the upstairs bedroom, I said they were in the backyard. He then proceeded down the stairs to look in the backyard for my parents. As he was in the kitchen, I ran down the stairs through the garage out of the house and called the police. This matter went to trial in April of 2016, less than a week before trial. The state tendered new discovery of a different statement from a complainant, at which point the complainant, in summary, says as he took a step back to look around, she was able to get out of the room and go downstairs prior to the defendant going downstairs. So, the issue with respect to specific intent, residential burglary requires the entry into the dwelling place of another knowingly, without authority, with the intent to commit a felony therein. In this case, the state said that the prerequisite felony was criminal sexual assault. That was another part of a later statement, which the complainant herself said she never said to anybody. A police officer testified at the preliminary hearing. I'm sorry, at the grand jury I said that, but the complainant said she never told that to anybody but a state's attorney later on before the actual trial. And it is not our, we don't challenge whether Mr. Johnson or the evidence seduced is sufficient to suggest that Mr. Johnson intended to have sex. We just challenge whether or not he intended to have sex by force, which is a very significant element in the charges that were laid against him. So, you think he had the intent to have sex by consent? Well, Judge, now in the social media age, anything's possible. We just challenge the fact that he, or challenge the assertion that he intended to use force. There's no evidence that he intended to use force. He made no commands, no demands, no threats, never touched her, never walked towards her. He stood in the doorway, and according to the complainant, said, I'm ready for you, as he started taking off his pants and his shoes. Mr. Johnson never fled the scene. When the police arrived, he was in the backyard, and that's where he was arrested. So, as I said, our contention is that there was no or insufficient evidence produced at trial to satisfy the element of force or threat of force. The complainant herself testified that he never demanded her to do anything, he never touched her, he never walked towards her, he never threatened her, he never brandished a weapon, or any of those things which the appellate courts and Illinois Supreme Court has found relevant to. Who's blocking the doorway? Well, she never said she attempted to leave, and he stopped her. He's on page, I think it was 45 of the record. She said she yelled, screamed for him to leave, and he took a step back, pulled up his pants. So, with respect to blocking the doorway, I think it was Keefe versus Tooley, wherein the defendant built a barricade around the bed, and actually got in the bed with the complainant, and touched the complainant's thigh. And his conviction was reversed. The court in that case says building a barricade and touching a thigh is insufficient to show the intent to use force. So we think the efforts of building a barricade around the bed are much more egregious than standing in a doorway and speaking. Also, in Peeble versus Matthews, the defendant in that case walked in, said, I want to expletive you, started getting undressed, sat on the sofa. The complainant was able to leave and call the police. When the police arrived, the complainant was still there. So we think that Mr. Johnson's – the facts of Mr. Johnson's case are analogous with the facts of the Matthews case. He never threatened, he never demanded, he made a statement, but the statement along with his actions did not convey sufficiently the intent that he would use force to accomplish sexual penetration. Excuse me one moment. That was Peeble versus Boots, where the defendant built the barricade around the bed. Also analogous to the facts of Peeble versus Matthews, this all occurred in the afternoon in daylight. In Peeble versus Boots, the injury occurred at 3 a.m. The state says that the cases we cite in our brief are distinguishable. They cite for Matthews that the distinguishing fact is that the complainant, Matthews, knew the intruder because he had done work at her home before. We don't think that that is a distinguishing fact that should change the outcome of this matter. We think it is irrelevant whether or not you know the person that comes in your house and says, and start getting undressed. If the court in that case can overturn the conviction, we would seek the same result in this particular case. The state also cites cases for the proposition that we don't have to wait for the defendant to complete the act before we can glean his or her intent. But the cases cited by the state all involve the use of a weapon, all involve violent physical attacks against the complainant. So we think those cases are distinguishable. So we do not believe that the state met its burden of proving specific intent to use force or a threat of force to engage in sexual contact with the complainant in this case. Five minutes, please. Thank you. The second issue regards the attempted criminal sexual assault allegation and conviction in this matter. Attempt in summary requires a defendant to take a substantial step with the specific intent of committing a felony. Once again, I agree with the state's assertion that we don't have to wait until the conduct is actually carried out. But what we do have to have is specific intent. And I believe that there is insufficient evidence to prove specific intent in this case. And as such, without specific intent, a very significant element, we don't think the state met its burden with regard to the attempted criminal sexual assault case. The groveling of the criminal sexual assault cases, as applies to this situation, is a force or threat of force. We don't think that it is illegal to desire sexual contact. We do think it is a problem if the defendant uses force or threatens the use of force, which we don't think was proven sufficiently in this case. And without the intent, we don't think that the state properly proved him guilty of attempted criminal sexual assault. We do not challenge the conviction of the criminal trespass to residents, because if the allegations are as the complaints say, he should not have been there. And we don't challenge that. However, we do challenge the intent with respect to the two residential murder accounts and the attempted criminal sexual assault counts. Do you have any questions? Counsel. May it please the court. Counsel. The reasonable doubt arguments that are presented. The people, first of all, would like to take and point out to the court that I think it's very important to keep the two separated. There's a little bit of overlap here, especially with the attempted sexual assault and the charge of residential murder. And we just have to prove to the residential burglary what the intent was at the time he entered. The intent, on the other hand, has to show specific intent to commit a specific crime. What the defendant argues here, basically, is the only issue, if you will, with respect to the reasonable doubt of the elements of residential burglary, is the intent at the time that the defendant entered. What was the defendant's intent when he entered the residence? Now, we all know, and Counsel has pointed out, that the parties didn't know each other. He wasn't invited in. He came through the back door. He walked through the kitchen. He used to live next door? Well, put it this way. He lived temporarily next door with Dusty Sullivan. He lived there for a time. He did some yard work, I guess, et cetera, et cetera. But there's no indication at all that he knew the neighbors or that there was any kind of friendship or any kind of relationship of any nature between the two. Because if you look at the victim's testimony, the victim's testimony was that when he came upstairs and stood in front of the bedroom, she saw someone that she didn't know. So, what she does is, she basically, this is at record at page 43. The victim was terrified. She took steps up the stairs. She was scared. At the top of the stairs, she saw a man standing in the doorway. She was terrified. It was a black male in a white shirt with black writing on it and dark pants.  It's 42 and 43 of the record. So, there was no relationship there. Now, when we look at what the intent was, we look at circumstances surrounding what has happened, because intent is rarely susceptible to direct proof. In this case, what did the defendant do? He surreptitiously entered a home that he was not invited in, didn't go to the front door, didn't knock on the door, didn't ring the doorbell, didn't do anything, came to the back door quietly, walked to the bottom of the stairs, looked around, walked up the stairs, and got to the bedroom door, saw the victim. At that point, what does he do? He starts removing his shoes, takes his pants down to mid-thigh, and the victim is able to take a seat and testify that the defendant has an erection. Standing in the doorway, blocking her ability to leave. Now, what does that show in terms of what his intent was when he entered? He obviously wasn't hungry, didn't look for food in the fridge. He obviously wasn't thirsty, didn't look for anything to drink, didn't look for any alcohol or anything, didn't steal anything. He was looking for a person. He found that person, and as soon as he saw that person, he basically starts to visceral and says, I am ready for you, with an erection. I think the facts and circumstances speak loudly for what they are. His intent was to commit a criminal sexual assault. Now, in terms of what the defendant tries to do, the defendant takes an element of criminal sexual assault, that being in this case would have to be threat of force or use of force. How do we take into account, this kind of overlaps, and this would be kind of the same argument that I would make with respect to the attempt, but when you start looking at the intent, what was his intent? His intent was to commit a criminal sexual assault. His attempt was to have sex with the victim. Obviously, it was going to be against her will, because what did she do? She didn't say, oh, wow, you're here, great, let's have sex. What she did is she cried out, get out of here. What are you doing here? Get out of my house, three or four times. With that, because she was screaming so loud, the defendant became, if you will, scared or became concerned that somebody else might be around. So he asked, is anybody else home? Boom, the victim says what? My parents are in the backyard. What does the defendant do? The defendant doesn't leave the house. He goes to check to see if anybody is in the backyard. What does that show you? Again, intent. He's not leaving. He wants to see if anybody is or isn't there. If nobody is there, my surmise is he would have attempted to try to go back and complete what he came there to do to begin with. So with respect to the residential burglary, what was his intent at the time of entry? To commit a criminal sexual assault. It's clear that the victim was not going to consent. It's clear that the only way that there would have been sex in this case would have been by force. There was also testimony about the difference in the size of the individuals in this particular case, which can imply, if you will, can imply force. And I don't think that the victim has to necessarily take in and do anything physical in order to take and show that there's no consent or to take and show that. She doesn't have to wait until the defendant does something, or comes about or comes forward as anything more than what he already said, with respect to the residential burglary. That, I think, was proved fairly beyond a reasonable doubt. With the attempt, before I go on to the attempt, I need to take into statements two cases, Matthews, Bruce, and Tooley. The thing is, if you take a look at the facts, Matthews, yes, the victim knew the defendant who had been to her house to do what? On a closed drive. The defendant walked into the home, uninvited, sat on a couch, fully clothed, and basically said, I want to have sex with you. And he sits there. Then he gets up, walks to the rear of the house, and as he walks to the rear of the house, he says, you know, why don't you take and call the police? The victim accepts his invitation as she's darting out the door, calls the police. When the police come in, he's sitting on the couch, naked from the waist down. Now, in that particular case, the court found that, they can say that there was an intent to commit a criminal sexual assault in that case because there was nothing else there. The defendant did not say anything other than what he wanted to take and do, but there was no other action. There was nothing done in front of her to take and indicate anything. He walks to the back of the house and says, call the police. So, in that case, the court found the facts insufficient to establish the intent upon entering was to commit a criminal sexual assault. There was heaven knows what, but basically the court found the facts insufficient. The defendant entered the victim's residence at night, rubbed the victim's inner thigh, but never expressed a desire to have sex with the victim, used no force, did not threaten her, did not touch her genitals, but what he did do is he did flee once she yelled out. The court, in too late, said those facts failed to establish that there was any effort or there was any intent to commit a criminal sexual assault. And then in too late, the defendant formed a furniture barricade around the victim's bed. The defendant did not use force against the victim, did not engage in a sexual contact, did not try to hide his identity, did not attempt to restrain the victim, but again, left willingly once she told or once she screamed. Now, what the difference in this case is, is the fact that what we have is we have the act plus a statement. The act is not just being in the room, not just doing something, let's just take and say unique, forming a barricade, okay, or anything like that. But what we do have is we have him disrobing. We have him with an erection and we have him saying the words, I am ready for you, and he's in a house and he came in uninvited. Even though it's between 4 and 5 o'clock in the afternoon, it doesn't make a difference about the time, it's what was his intent. And what you see in these cases that are distinguishable from ours is there really is no clear intent to commit a criminal sexual assault. Yes, it matches what he said is what he said, but what did he do? He just sat there fully clothed and made a statement. Then he gets up and walks to the back of the house, still fully clothed, and what does he do? Tells the victim, well, you know, maybe you want to take a call with the police. So I think that the cases that the defendant cites, I think, are all clearly distinguishable from the cases of ours, and I think we've clearly established without a reasonable doubt residential burglary based on committing the felony of criminal sexual assault. Thank you. Now, with respect to the attempt, criminal sexual assault, really what the arguments here are all about is, once again, mere preparation versus substantial step. Basically, what the defendant is arguing is, walking into a house uninvited, walking up the stairs, standing in the doorway, blocking it, pulling down your pants, taking off your shoes, and basically having an arrest and saying, I'm ready for you, is nothing more than mere preparation. The state is saying that that is a substantial step. Don't have to wait for the defendant to take any other further action because we know, based on the testimony, that the victim wasn't consenting and that the only way that there would have been any kind of sexual contact would have been by force, whether it's a difference in the size of the individual or whether it's just mere capitulation because she's afraid, because she can't fight him off, she can't do it. The point is, is that any sexual contact from that point on would have been by force. And I don't think that the defendant has to have a gun. I don't think the defendant has to take and say, you know, I'm going to beat you, I'm going to take this. Doesn't have to actually touch the victim to do anything in order to have an attempt at criminal sexual assault under the facts of this case. I simply take and, if you will, put myself in the victim's position, and that's exactly what I would have thought because she basically testified he was going to sexually assault me. So I think under the facts of this case, I think they are distinguishable from Matthews, Bruce, and Tooley. I think that what the state has done, the state, I believe, has sufficiently established a substantial step with respect to the attempt. And therefore, we believe we have proved the defendant guilty beyond a reasonable doubt of the residential burglary and the attempt at criminal sexual assault. And we would ask this court to affirm. If there are any other questions, I'll be happy to respond. Thank you. Counsel? Very briefly, the state, again, goes at length regarding the unauthorized entry, which I concede was wrong. But unauthorized entry is proof of intent for theft but not for criminal sexual assault. I think the case law is clear on that. And with respect to counsel's attempt to distinguish the cases, he says that in... What kind of theft are you attempting to commit when you're taking your counsel? Well, I'm not saying that he was intending to commit theft, but I'm saying that the case law says that entering into a residence without authority in itself can be proof of the intent to commit a theft, not the intent to commit criminal sexual assault. And even if the court believed that Mr. Johnson intended to have sex, there's no evidence that he intended to do so by force. The complainant testified, and I said earlier, that once she yelled for him to get out, he took a step back and started pulling up his pants and his shoes. Also, she told him her parents were in the backyard. Well, allegedly Mr. Johnson came through the backyard. If somebody was in the backyard, he would have seen them and would have said, hey, you're not telling me the truth, and proceeded to do it. If that was what he intended to do, he would have known that nobody was in the backyard. Again, according to the complainant's written statement that she made, immediately after the event occurred, she said he stepped back, went downstairs, went into the kitchen. She came downstairs. Now, the complainant presumed or maybe assumed that he went back to see who was there. But I say again that the defendant had just come in through the back, and if somebody was in the backyard, he would have been aware of that. So we take it as speculation on the complainant's part to say what he went down for. We think the facts are more consistent with the fact that he sees that it's not going to be the fantasy that maybe he thought it was, and he retreated. In the case where the defendant built a barricade around the bed and touched the complainant's inner thigh, the state argues that the reason that the court reversed that conviction was because rubbing an inner thigh does not mean that somebody wants to have sex. Why would a man rub a woman's inner thigh if that was not part of the purpose? Unless he's a physician or a physical therapist or something like that, why would a man break into someone's home in the middle of the night and rub a lady's inner thigh and put barricades around the bed if it were not for the intent to have sex? But it's our opinion, it's our position that the court reversed that conviction because the court found that even if you did want to have sex, it was not by force. And as the defendant did in the case here today, when the complainant yelled, he stepped back, and we place heavy emphasis on her written statement that she gave immediately after the occurrence, is that once he yelled, he pulled up his pants, put on his shoes, went downstairs, and she followed him, which would be the same as in Matthews when the defendant in Matthews did not prevent the complainant from leaving, and too late, the defendant fled when the complainant objected. You're saying those actions are in the cases that talk about preparation. Your preparation is not enough. Him coming in, him taking his pants down, that those acts are preparation. It's not a substantial step, which is what they seem to talk about that was lacking in the three cases. And again, Hawkins and Morris said that their preparation isn't enough. The question is whether the Defense Act brought him in a dangerous proximity to success. And so you're saying that those are the things that are missing? That and the specific intent, taking those steps with specific intent to commit the underlying felony. We don't think there's evidence of specific intent for him to commit the actual felony. And I would also address in Matthews, the state says that all the defendant in Matthews did was say, I want to expletive you, and sat on the couch. My reading of the case says that the defendant says, I want to expletive you, as he started undressing. Truly, he did not prevent the complainant from leaving, and he sat on the couch. And in the case that bar, the defendant in this case did not prevent the complainant from leaving. Whether he went down the stairs first or she was able to get by him and go down the stairs, there's no evidence that he said, hey, stop, come back here, that he ever reached out to try to stop her, that he chased her. There's no evidence of that. So we think that the case at bar should receive the same treatment as people versus Matthews. We don't think there's intent to use force to have sex. The state may have presented evidence sufficient to prove that he wanted to have sex, but that is not where the analysis stops. The analysis stops at whether there's evidence that he intended to use force, and it is our position that there is no evidence or no one was presented at trial. Thank you. Any questions? Thank you, counsel. Thank you. The court will take this matter under advisement, and thank you for your arguments. And we'll receive a decision with some discretion. Thank you. Thank you very much.